Good morning. May it please the Court. Jan Pennington on behalf of the Appellant, Mr. Lawrence Lusk. This is a case, Your Honors, where the sentencing guidelines were sufficient and not greater than necessary to achieve the purposes of sentencing, specifically the statutory goals. In this case, the District Court erred by finding that workplace violence, data, and studies that were not connected to Mr. Lusk's conduct justified a variance above the sentencing guidelines. Furthermore, the sentencing here did not reflect the basic facts of the case, which is Mr. Lusk's conduct did not pose any specific or direct harms to the people at his workplace. I'd like to start with whether the guidelines have been notably too low in this case. That was the District Court's specific finding. When we look at procedural error under this Court's jurisprudence, we have to consider whether the District Court avoided extraneous comments and whether there was a sufficient and proper explanation grounding the sentence. In this case, it's not where the guidelines can't accurately capture the various levels of enhancement based on specific characteristics of both the offense and of the weapon. For example, a large-capacity magazine would justify an enhancement, the specific characteristics of the gun, of whether it was stolen, whether there's an obliterated serial number. Then we certainly have the availability of Section 5K of the guidelines, which calls for potential enhancement if there's specific danger, specific threat posed by the conduct. I think the District Court took was it effectively created a guideline on a whole cloth. It enhanced on the basis of its finding that the workplace presence of the firearm in the workplace specifically justified the variance. Well, I don't think that it's right to say that Judge DiGiulio enhanced the sentence as we use that term in the context of guideline sentencing. He issued a non-guideline sentence based on a contextualized factor that was not captured by the guidelines, which is to say that your client introduced a firearm into the workplace. And why was that error to do that in the 3553A evaluation? I think you're under the error is that the district judge said that the guidelines aren't capable of capturing the conduct. I think the guidelines are capable of capturing the conduct. But they don't. I mean there isn't a specific guidelines adjustment for guns in the workplace, right? That's correct, Your Honor, there is not. So the judge was taking into account a particular contextual factor specific to this case, even though he didn't use the gun. He took it to the workplace and stashed it there. And so why is it improper or unlawful for the judge to consider that contextual factor when evaluating the case under 3553A? It strikes me as a very sensible thing to do. Your Honor, I think that specifically to that question, the guidelines do, specifically Section 5K2, they do provide for an enhancement potentially if the firearm poses a specific risk to an individual, if it poses a specific danger. I think that would encompass workplace violence or workplace danger. I think we have to look at whether there was a substantively reasonable sentence here in the 3553A, not just with the workplace violence studies, but also with respect to whether the actual sentence here as imposed reflect the conduct at issue. And if the district court is saying this is a particular kind of sentence that needs to go above the guidelines because it's reflective of firearm possession at a workplace or it's reflective of enhanced risk, and we look at this social data, Your Honor, that has to specifically connect to the conduct at issue. So I don't think it was improper for the district court to necessarily use workplace data. I think workplace data, it's available to a district court as is any particular characteristic. It just has to be contextualized or tethered to the specific facts at issue here or any individual sentence. And if the district court is saying, he brings a firearm to the workplace and we look at all this workplace violence and all this workplace data showing that there's hazard with respect to firearms, they don't connect to the facts of the case here. There was nobody that was threatened by the firearm. Mr. Lusk didn't threaten anybody. He didn't brandish the weapon. I certainly see where firearms- Wasn't the district court looking at the potential risks of having a firearm on the worksite? I mean, sure, after the fact, you can, you know, the risk is that he would be incited enough or provoked enough to brandish, that he would be provoked enough to threaten someone with a gun, right? Wasn't the district court looking at the underlying risk? Your Honor, I think that's correct. I think that there's probably innate or inherent risk that attaches to a firearm. It is capable of causing deadly harm. But I think to begin, the guidelines capture that and that's why it's a federal offense for specific target classes of people or in certain target classes of place or certain kinds of instrumentalities. But I think that's true. The district court's looking at the risk, but the risk didn't connect to the proffered workplace data. So if the workplace data is talking about violence and homicides related to firearms, I think the number was 387. Those specific risks weren't evident in this case, outside of just the inherent risk that a firearm brings. I mean, I certainly can see there's risk with a firearm whenever you bring it into an environment where there's other people present. But that risk, the inherent risk of the firearm, didn't connect with the actual data, which was showing the use of a firearm in a specific way. I'd also like to turn your Honor's attention to the district court's analysis of Mr. Lusk's criminal history. The criminal history here at issue, the district court made a finding that the specific recidivism rate among firearm offenders, which seems to be demonstrably high, justified a basis for the district court here to go above the sentencing guidelines. What I think, Your Honor, was improper about that is, there's case law in this case, there's case law in this circuit that says district court can't scapegoat a particular defendant based on societal ills. For example, we've cited cases where if the district court has concerns with firearm violence or any sort of social ill, that can't reflect the basis of the variance. You can't impute the concern the district court may have with workplace violence or with recidivism rates among firearm offenders to the specific defendant here. That was not proper. I think that generally you can, there's certainly the incapacitation goals that reflect sentencing, but the incapacitation can't be based on a sort of group characteristic, which would be in this case, the incapacitation that seemed to be motivating the district court was primarily, as it relates to criminal history, Mr. Lusk's connection with being associated with other firearm offenders. Understandably, firearm offenders have this high rate of recidivism, but the guidelines themselves capture the recidivism. They capture the criminal history. That's what moves him into a category six. He had the 18th horrible criminal history points. That's what moved him there. I don't think it was proper for the district court to apply a higher sentence based on recidivism that's already reflected within the guidelines. As I see that I've met my rebuttal time. Thank you. That's fine. Mr. Tempkin. May it please the court. Good morning, your honors. Eli Tempkin for the United States. This court should At the end of the day, this was a 46-month sentence for a five-time gun offender who most recently received a 34-month sentence plus another 12 months on revocation for committing the same offense of being a felon in possession of a firearm. Procedurally, the district court did exactly what it was supposed to do here. It calculated the guidelines range. It considered the party's arguments. It didn't rely on clearly erroneous facts. It weighed the section 3553A factors and it explained the sentence that it reached. There was no error in mentioning the workplace violence statistics. The district court is permitted to situate an offense in the broader context. Mr. Lusk argued that this was, I believe the exact words were, a benign situation or a situation where the court was situating it in context with the risks that Mr. Lusk created when he brought this weapon to his workplace, which was supposed to be gun-free, and when he left that weapon in a shared workstation in a wastebasket. That comment was nowhere near as egregious as comments where this court has reversed for an inflammatory or extraneous remark. Additionally, this court considers the explanation the district court provided as a whole. It doesn't just look at a single statement in isolation. Substantively, the 46-month sentence here was reasonable based on Mr. Lusk's criminal history and his offense conduct. The criminal history I mentioned before and his recent federal offense, federal sentence, that wasn't enough to deter him from carrying a weapon again around a vacation. The manner in which he possessed the gun here created additional risks, as the district court noted. The sentencing guidelines are not binding. The district court weighed the statutory sentencing factors, and there was no problem in thinking about the risks that Mr. Lusk created when he carried this gun to work. There was no error in mentioning the recidivism rates of firearm offenders. The court was saying firearm offenders recidivate at a high rate. Mr. Lusk recidivates even more than that. This was a comment about Mr. Lusk's recidivism, which to date has been 100%. The district court was not scapegoating Mr. Lusk for firearm offenders in general. If there Thank you. Thank you. Thank you, Your Honor. I would say that when we look at the district court's approach to the sentencing here, when he's talking about the rates of recidivism, the comment that he made is that Mr. Lusk is proving them optimally or too high. It's Mr. Lusk that specifically is showing the recidivism too high. I think when you look at the transcript, when you look at the totality of the sentencing, it's the district court expressing frustration with firearm offenders and their high rates of recidivism and applying that specifically to Mr. Lusk. So I don't think we can say that it's solely a comment that reflects Mr. Lusk. It's also the district court's frustration with recidivism as it relates to firearm offenders more broadly. And we certainly understand the district court's frustration with that. Firearm offenses, they may have a frustratingly high level of recidivism, but I don't think it was appropriate for the court to express that frustration and then apply it specifically to Mr. Lusk's case. I think that, I don't know if it's as far as scapegoating, but I don't think it's specifically an appropriate factor when we consider sentencing. I think also when we think about the risks of the conduct of the issue, it is important to consider that there was no specific risk here, independent of the firearm. Again, a firearm themselves, just innately, there's risks attached with certain kinds of possession. But I don't think that risks of workplace violence were proper here. Data reflecting workplace violence when there was no workplace violence here. There was no brandishing of the weapon. There was no direct threat posed to anybody at the workplace. My understanding is at the workplace, the firearm was found in a trash receptacle and then promptly found by police. So I understand the district court's inclination to say that firearms pose a certain risk, but it can't connect it or situate it in connection with workplace violence. It just didn't occur in this case. For those reasons, we would ask that this court reverse and remand. Thank you. Thank you. We'll take the case under advisement.